UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**MICHAEL A. SANTARO,**

**Plaintiff/Appellant,**

**-v-**                                           **5:10-CV-357**
                                                  **[Bankr. Ct. Adv. Pro. No. 09-50113]**

**ANTHONY J. SGROI,**

**Defendant/Respondent.**

++++++++++++++++++++++++++++++++++++++++++++++++++++++++

**In re:**

**ANTHONY J. SGROI,**                             **Bankr. Case No. 09-30416**
                                                  **Chapter 7 Case**

**Debtor.**

++++++++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:

Costello Cooney Fearon, PLLC
Dennis P. Hennigan, Esq., of counsel
Salina Place, 205 South Salina Street
Syracuse, New York 13202-1327
Attorney for Appellant

Bond, Schoeneck and King, PLLC
Camille W. Hill, Esq., of counsel
Louis Orbach, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202
Attorneys for Respondent

Leonard & Whitney
Mary E. Leonard, Esq., of counsel
P.O. Box 787, One North Main Street
Cortland, New York 13045
Chapter 7 Trustee

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

On February 26, 2009, debtor Anthony J. Sgroi ("Sgroi") filed a voluntary petition with Bankruptcy Court under title 11 of the United States Code ("Bankruptcy Code"), chapter 7, 11 U.S.C. §§ 701, *et seq.  In re Anthony J. Sgroi*, Bankr. Case No. 09-30416.  On August 5, 2009, Michael A. Santaro ("Santaro") commenced this adversary proceeding against Sgroi; on January 4, 2010, he filed an amended complaint.  *Santaro v. Sgroi*, Bankr. Ct. Adv. Pro. No. 09-50113. Essentially, the amended complaint claims that Sgroi engaged in fraud and misconduct in his role as managing member of an automobile dealership, and that as a result, Santaro, a minority member, was compelled to pay over $1.4 million on his personal guarantee of the dealership's debt to Key Bank.

On January 19, 2010, Sgroi moved to dismiss the amended complaint, arguing that it failed adequately to plead a debt that was nondischargeable under the Bankruptcy Code, 11 U.S.C. §§ 523(a)(2)(A),(B);(4); 727(a).  On February 16, 2010, United States Bankruptcy Judge Margaret Cangilos-Ruiz granted Sgroi a discharge under section 727 of the Bankruptcy Code.  11 U.S.C. § 727.  On February 17, 2010, Judge Cangilos-Ruiz granted Sgroi's motion to dismiss the instant adversary complaint in its entirety with prejudice.  Santaro appeals from the dismissal order.  As set forth below, the Court reverses the dismissal order in part and reinstates Counts I and IV of the amended complaint.

**AMENDED COMPLAINT**

The amended complaint alleges that Sgroi and Santaro were members of Legacy Automotive, LLC ("Company"), which did business as "Legacy Kia" and which sold and serviced automobiles.  Sgroi was President and Managing Member of the Company and had full

-2-

and complete control over its funds, books and records.  Santaro, who held a minority interest, was not an active participant in the Company's day-to-day operations.  Sgroi obtained inventory financing for the Company from Key Bank in July 2004, and Santaro, as a member of the Company, signed a personal guarantee of the debt.

The amended complaint further claims that prior to January 2007, the Company, under Sgroi's direction and control and without Santaro's knowledge or consent, sold vehicles "out of trust," that is, without remitting to Key Bank the amount of proceeds required by the inventory financing agreement.  In January 2007 Key Bank notified the Company that it was in default on its inventory financing "as evidenced by the current Sold out of Trust amount of $721,247.00." Sgroi sold some real estate and used the proceeds to bring the account current by March 2007.

Santaro further alleges that from March, 2007 through January, 2008, the Company, under the direction and control of Sgroi and without Santaro's knowledge or consent, again sold vehicles out of trust and did not remit to Key Bank the proceeds from vehicle sales, in violation of the Key Bank financing agreement.  During this time period, Sgroi caused the Company to issue and deliver to Santaro monthly "Dealer Financial Statements" which misrepresented the Company's financial condition by continually understating the amount owed to Key Bank.  These Dealer Financial Statements, which were required by the Company's franchise agreement with KIA of America, were prepared under Sgroi's direction and supervision and were regularly delivered to Santaro at Sgroi's direction.  Santaro relied on these statements in determining the Company's financial status and in forbearing from taking action to protect his interest as guarantor of the Company's debt to Key Bank.

Also from March 2007 to January 2008, according to the amended complaint, instead of

remitting the proceeds of vehicle sales to Key Bank, Sgroi diverted the proceeds to himself and at least three other automobile dealerships of which he was the majority owner and which he controlled.  Sgroi engaged in this practice without Santaro's knowledge or consent.  The practice caused the Company to be out of trust and increased the debt it owed to Key Bank.  It also violated 6.8(b) and (c) of the Company's Operating Agreement which provides: "No loans or guarantees of loans shall be made by the Company to any Manager, Member or any Affiliate thereof"; and "The funds of the Company shall not be commingled with the funds of any other Person."  Exhibit A, attached to and incorporated by reference into the amended complaint, lists by date, check number, and amount, three payments from the Company to Sgroi totaling $117,500.  Exhibit B lists by date, check number, and amount, 17 payments from the Company to Legacy Ford, Inc. totaling $465,000.  Exhibit C lists by date, check number, and amount, seven payments from the Company to Legacy Ventures, LLC totaling $137,000.  And Exhibit D lists by date, check number, and amount, 16 payments from the Company to Backus Management, LLC totaling $550,200.  These 43 listed payments total $1,269,700.  Santaro states he is not aware of, and investigation has not disclosed, any consideration received by the Company for the payments.  Thus, Santaro claims, Sgroi acted with fraudulent intent while in a fiduciary capacity by wrongfully diverting funds and assets for no consideration and for other than legitimate Company purposes.  Santaro claims that as a result of Sgroi's diversion of funds, the Company lacked sufficient funds to repay its debt to Key Bank, thus compelling Santaro to pay the debt from his own funds.

The amended complaint alleges that Sgroi's fraudulent diversion of vehicle sale proceeds to himself and his other dealerships caused the Company to be out of trust with Key Bank for

more than $600,000 by October 2007.  Santaro received a notice from Key Bank on November 30, 2007, stating that "the SOT [sold out of trust] appears to have increased by approximately $220,000.00."  When Santaro asked Sgroi for an explanation, Sgroi falsely stated to Santaro: "We are not SOT.... You will not be out any more than what we currently have."  Santaro relied on this representation in forbearing from taking action to protect his interest as guarantor.

According to the amended complaint, the Dealer Financial Statements under-reported the amount owed to Key Bank in October 2007 by $613,185; in November 2007 by $148,715; in December 2007 by $681,968; and in January 2008 by $1,337,617.[1]  Santaro avers that the failure of the Dealer Financial Statements to reflect accurately the sums owed to Key Bank enabled Sgroi to conceal the diversion of monies to himself and his other entities.[2]

The amended complaint also refers to an Agreement entered in August 2008 ("August 2008 Agreement") by Santaro, Sgroi, and Daniel J. Knoblock (the third member of the Company), which, *inter alia*, permitted Sgroi to withdraw from the Company.  It provided in part:

> 5. Representation by Sgroi. Sgroi hereby represents to Santaro that, during the time Sgroi and Knoblock had authority or control over, or access to, the books, records, accounts or funds of the Company, Sgroi did not appropriate, withdraw, use or expend Company funds or assets for other than legitimate Company purposes. Repayment of loans made by Sgroi or other Sgroi family members to the Company is deemed to be a "legitimate Company purpose." Sgroi further represents and warrants that he has not accumulated for his own, or others', use or benefit, nor does he presently hold or have control over, any Company funds or assets. Sgroi

---

[1] The amended complaint states that in February 2008, Bank of America became the inventory financing bank for the Company in place of Key Bank.

[2] Indeed, the $1,337,617 amount allegedly under-reported as of January 2008 differs by only $77,917 from the $1,259,700 allegedly diverted by Sgroi to himself and his other entities between February 2007 and February 2008.  (According to Exhibit A, Sgroi paid himself another $10,000 on June 3, 2008, bringing the total of the amounts listed on Exhibits A through D to $1,269,700.)

acknowledges that Santaro is relying specifically on these representations
in entering into this Agreement.

The amended complaint also cites to paragraph 7: "In the event any material representation(s)

made by Sgroi in paragraph '5' above is/are false ... Santaro retains the right to seek all remedies

available to him, in law or in equity, including, in the event Sgroi files for protection under the

Bankruptcy Code, Santaro's rights under Sections 523(a) and 727(a) of the Bankruptcy Code."

According to the amended complaint, in reliance on Sgroi's representations, Santaro "waived

certain contractual claims he had against Defendant, and also waived and released any

non-dischargeability claims against Defendant under section 523(a) of the Bankruptcy Code."

Ultimately, Santaro paid the bank $1,477,094.20 (*i.e.*, $1,337,617 plus interest) on his

personal guarantee.  Santaro claims that this loss resulted from Sgroi's fraud and misconduct.

The amended complaint claims in Count I that Sgroi owes Santaro a debt of $1,477,094.20 which

is nondischargeable under 11 U.S.C. § 523(a)(4). Counts II and III claim that the debt is

nondischargeable under 11 U.S.C. § 523(a)(2)(A).  Count IV claims the debt is nondischargeable

under 11 U.S.C. § 523(a)(2)(B).

## APPLICABLE LAW

Bankruptcy Court's determination that Santaro's amended complaint fails to state a cause

of action is a legal conclusion subject to *de novo* review.  *See* Fed. R. Bankr. P. 7012(b); Fed. R.

Civ. P. 12(b)(6); *In re Ionosphere Clubs, Inc*., 922 F.2d 984, 988 (2d Cir.1990); *In re Musicland

Holding Corp.*, 386 B.R. 428, 435-36 (S.D.N.Y. 2008).  In addressing a dismissal motion, a court

must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true,

and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc*.,

282 F.3d 147, 152 (2d Cir. 2002).  A complaint must plead "enough facts to state a claim to relief

-6-

that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 550 U.S. 544, 570 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Rule 7009 of the Federal Rules of Bankruptcy Procedure provides that Rule 9 of the Federal Rules of Civil Procedure applies in adversary proceedings. Thus, an adversary complaint alleging fraud must meet the specificity requirement of Rule 9(b) ("In alleging fraud..., a party must state with particularity the circumstances constituting fraud"). To satisfy Rule 9(b), a pleading must "state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir.1993); *accord Knoll v. Schectman*, 275 Fed.Appx. 50, 51 (2d Cir. 2008). Rule 9(b) further provides: "Malice, intent, knowledge, and other conditions of a person's mind may be averred generally." A plaintiff must allege facts that give rise to a strong inference of fraudulent intent; he may do this by alleging facts to show that defendant had both motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).

Section 727(a) of the Bankruptcy Code requires that, with exceptions not applicable here, the debtor's debts be discharged. 11 U.S.C. § 727(a). Even where a debtor is granted a discharge, however, certain debts may survive. In contending that the debt in issue is nondischargeable, Santaro relies on portions of section 523 of the Bankruptcy Code, as follows:

> (a) A discharge under section 727 ... of this title does not discharge an
> individual debtor from any debt–

***
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
        (B) use of a statement in writing--
            (i) that is materially false;
            (ii) respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
            (iv) that the debtor caused to be made or published with intent to deceive[.]
***
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

11 U.S.C. § 523(a)(2),(4).

One of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the "honest but unfortunate debtor" to begin a new life free from debt. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Nevertheless, the Bankruptcy Code's nondischargeability provisions are intended to "ensure that all debts arising out of fraud are excepted from discharge, no matter their form." *Archer v. Warner*, 538 U.S. 314, 321 (2003) (citation and internal quotes omitted) (quoted in *In re DeTrano*, 326 F.3d 319, 321 (2d Cir. 2003)).

## DISCUSSION

The Court now addresses whether the factual content of the amended complaint adequately pleads the causes of action set forth therein. The Court begins with Count IV.

**Count IV**

In Count IV, Santaro alleges that the monthly Dealer Financial Statements prepared by or at the direction of Sgroi "purposely failed to accurately reflect the Out of Trust sales, and

intentionally misstated and misrepresented [the Company's] financial condition as it related to the debt personally guaranteed by Plaintiff in connection with the Company's inventory financing with Key Bank."  Santaro alleges that Sgroi knew the statements were materially false, that they concealed his pattern of selling vehicles out of trust, and that they misrepresented the Company's financial condition.  Further, Santaro alleges, Sgroi produced the statements with the intent to deceive Santaro, who reasonably relied on the written representations therein and sustained damages as a result.

Count IV is based on 11 U.S.C. § 523(a)(2)(B), which provides for the nondischargeability of any debt obtained by:

> (B) use of a statement in writing--
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

These are essentially the elements of a fraud cause of action, and must be pleaded with the specificity required by Rule 9(b).

Preliminarily, the Court rejects the argument that the only "debt" in issue here is the 2004 guarantee and that, since the guarantee did not result from fraud, Santaro cannot state a cause of action under section 523.  The debt alleged here is the $1,477,094.20 which Santaro seeks to recover from Sgroi on the ground that Santaro suffered a loss in that amount due to Sgroi's wrongful and fraudulent conduct.

In support of the first element of section 523(a)(2)(B) – the use of a statement in writing – the amended complaint relies on the monthly Dealer Financial Statements issued during specified time periods at the direction of Sgroi, who, as President and Managing Member, had full and

complete control over the Company's funds, books and records.  Thus, Santaro has specified the statements he contends were fraudulent, and where, when and by whom they were made.  In pleading the second element – material falsity – Santaro alleges that the Dealer Financial Statements were false because they continually understated the amount owed to Key Bank.  For example, they under-reported the amount owed to Key Bank in October 2007 by $613,185; in November 2007 by $148,715; in December 2007 by $681,968; and in January 2008 by $1,337,617.  This under-reporting was material because it concealed the true amount owed to Key Bank, violated the terms of the Key Bank financing agreement, concealed Sgroi's wrongdoing, and exposed Santaro to liability on his personal guarantee of the Company's debt to Key Bank.  The third element – that the statement concerns an insider's financial condition – is met by the undisputable fact that the Dealer Financial Statements were issued with respect to the Company's financial condition, and, as Sgroi points out, the Company is an "insider" within the meaning of section 101(31)(A)(iv) of the Bankruptcy Code ("The term 'insider' includes ... [a] corporation of which the debtor is a director, officer, or person in control.").  The fourth element is reasonable reliance on the statements.  Santaro alleges that he relied on the Dealer Financial Statements "in forbearing from taking action to protect his interest as a guarantor of the Company's debt to Key Bank."  The reasonableness of this reliance is adequately supported for pleading purposes by the fiduciary relationship between the two men as members of a limited liability company;[3] by Sgroi's position as President and Managing Member of the Company with full and complete control over its funds, books and records; by Sgroi's alleged oral statement to Santaro in

_____

[3]

LLC members owe each other the traditional fiduciary duties that directors owe a corporation.  *See DirecTV Latin America, LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 438-39 (S.D.N.Y. 2010); *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 204 (S.D.N.Y. 2008).

-10-

November 2007 that "We are not SOT.... You will not be out any more than what we currently have"; and, arguably, by Sgroi's repayment of sums owed to Key Bank in March 2007.  And the final element – Sgroi's intent to deceive – is adequately pleaded by the allegations that the false Dealer Financial Statements enabled Sgroi to conceal his misconduct in selling vehicles out of trust and his diversion of funds from the Company to himself and his other entities.

These allegations provide Sgroi with fair notice of the claims and enable him to prepare his defense.  They cannot reasonably be viewed as conclusory.  *Compare Knoll v. Schectman*, 275 Fed.Appx. 50, 51 (2d Cir. 2008) (stating that describing a predicate fraud in terms such as "fraudulent accounting" or "fraudulent Escrow accounting statement" is insufficient under Rule 9(b)).  The amended complaint contains non-conclusory factual allegations sufficient under *Twombley* and Rule 9(b) to plead that Sgroi committed fraud by causing the issuance of Dealer Financial Statements which concealed the out of trust sales and misrepresented the Company's true financial condition; that Santaro reasonably relied on the statements to his detriment; and that Sgroi engaged in this conduct with intent to deceive.

**Count I**

Under 11 U.S.C. § 523(a)(4), a discharge under section 727 does not discharge the debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]"  Count I claims that, while acting in a fiduciary capacity, Sgroi committed defalcation, embezzlement, and larceny, and that therefore the debt he owes Santaro is nondischargeable under section 523(a)(4).  In pleading Count I, Santaro relies on Sgroi's alleged conduct in "engaging in Out of Trust sales, concealing such wrongful conduct, and transferring money to insider entities for no consideration ... while acting in a fiduciary capacity."  The parties do not

dispute that Santaro is required to plead Count I with the specificity required by Rule 9(b).

The Court first considers whether Santaro has adequately pleaded embezzlement. For purposes of section 523(a) proceedings, embezzlement means "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *See Forest Diamonds Inc. v. Aminov Diamonds LLC*, 2010 WL 148615, *14 (S.D.N.Y. Jan. 14, 2010). The first element of embezzlement – the appropriation of property – is satisfied by Santaro's allegations that Sgroi diverted funds from the Company to himself and his other entities; by the exhibits listing check numbers, dates, and amounts; by the fact that such conduct would violate the Company's Operating Agreement; by Santaro's statement that this diversion occurred without Santaro's knowledge or consent; and by the statement that Santaro does not know of, nor has investigation disclosed, any consideration for these payments. These allegations cannot reasonably be viewed as conclusory. That this appropriation of Company property was fraudulent is supported by the allegation that it was concealed by the Dealer Financial Statements; this Court has already found that the fraudulent nature of these statements is properly pleaded under Rule 9(b). Sgroi's representations in the August 2008 Agreement (including his statement that he "did not appropriate, withdraw, use or expend Company funds or assets for other than legitimate Company purposes"), and the fact that the alleged conduct would violate paragraphs 6.8(b) and (c) of the Company's Operating Agreement, may also support a finding that the appropriation was fraudulent. The factual allegations also provide strong circumstantial evidence of intent. That Sgroi was a person to whom the property was entrusted is established by Sgroi's position as managing member of the Company and by his fiduciary relationship with Santaro. The amended complaint sets forth factual allegations of embezzlement

sufficient to satisfy Rule 9(b).

Larceny in this context "necessitates a showing that the debtor wrongfully took property from the rightful owner with fraudulent intent to convert such property to its own use without the owner's consent." *In re Stern*, 231 B.R. 25, 26 (S.D.N.Y. 1999) (cited in *In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007)).  The elements of this cause of action are adequately pleaded under Rule 9(b) by the factual allegations discussed above in connection with embezzlement, in particular the allegations that Sgroi diverted Company funds to his own purposes without Santaro's knowledge or consent, and concealed his actions by causing the issuance of the fraudulent Dealer Financial Statements.

Defalcation under 523(a)(4) means "misappropriations or failures to account" by a fiduciary, and requires "a showing of conscious misbehavior or extreme recklessness[.]"  *In re Hyman*, 502 F.3d 61, 68 (2d Cir. 2007); *see also In re Hayes*, 183 F.3d 162, 172 (2d Cir. 1999). The Court has already found adequate factual allegations that Sgroi fraudulently appropriated funds from the Company and that he caused fraudulent Dealer Financial Statements to be issued. His status as a fiduciary is not disputed.  And "conscious misbehavior" is adequately pleaded by the factual allegations that Sgroi was managing member; that he caused 43 Company checks to be written to himself and his other entities; that he caused the false Dealer Financial Statements to be issued; that their issuance enabled him to conceal his misconduct in selling vehicles out of trust and in diverting funds from the Company to himself and his other entities; and that he made the representations in the August 2008 Agreement.

In sum, the non-conclusory factual allegations in the amended complaint support Count I and satisfy Rule 9(b).  The Court rejects the argument that, as the amended complaint is pleaded,

the allegation that Sgroi wrote 43 checks to himself and his other entities is equally susceptible to a non-culpable explanation.  To the contrary, Santaro alleges that Sgroi paid the proceeds of vehicle sales to himself and his other entities instead of to Key Bank without Santaro's knowledge or consent; that it was done in violation of the Company's Operating Agreement; that it violated the financing agreement with Key Bank and caused the Company to be out of trust; and that Santaro has no knowledge of, nor has investigation disclosed, consideration for these payments.  The Court has reviewed the other arguments raised by Sgroi regarding Count I and concludes that they lack merit.

**Count II**

Next, the Court reviews Count II, alleging the nondischargeability of the debt under 11 U.S.C. § 523(a)(2)(A).  Count II claims that Sgroi "made false representations orally and in writing to Plaintiff from March of 2007 through August of 2008 regarding his management and operation of [the Company] and regarding the propriety and integrity of his conduct as a fiduciary in connection therewith."  Count II further claims that Sgroi, "having purposely engaged in a course and pattern of Out of Trust sales and insider transfers of money for no consideration," knew that his representations were false when made and made them with intent to deceive Santaro.  Santaro alleges that he relied on Sgroi's misrepresentations and suffered a loss as a result.

Section 523(a)(2)(A) provides for the nondischargeability of a debt resulting from "false pretenses, a false representation, or actual fraud <u>other than</u> a statement respecting ... an insider's financial condition" (emphasis added).  The actions forming the basis of Count II are Sgroi's misrepresentations and fraud which gave the false impression that he was properly handling the

-14-

Company's finances, hid the extent of the Company's debt, and concealed the diversion of the Company's financial assets.  These all concern the Company's financial condition and thus fall within section 523(a)(2)(A)'s exclusion of debt resulting from misrepresentation and fraud respecting "an insider's financial condition."  Count II was properly dismissed.

**Count III**

Finally, the Court reviews Count III, which, like Count II, relies on 11 U.S.C. § 523(a)(2)(A).  In Count III, Santaro states: "In the August 2008 Agreement..., Defendant represented to Plaintiff that Defendant did not appropriate, withdraw, use or expend Company funds for other than legitimate Company purposes."  He further avers that the representation was false when made because Sgroi "had engaged in a course and pattern of insider transfers of Company funds for no consideration"; that defendant knew the representation was false when made and made it with intent to deceive plaintiff and with knowledge that plaintiff was relying on the representation in entering into the August 2008 Agreement; that Santaro "in fact relied on such representation in entering into the Agreement, and in waiving certain claims Plaintiff had against Defendant and in releasing Defendant from certain claims"; and that Santaro has suffered damage as a result of the misrepresentation.  Essentially, this claim alleges that Sgroi made false and fraudulent representations in the August 2008 Agreement concealing his mismanagement of the Company's finances, giving the false impression that he had properly handled the Company's finances, and hiding the extent of the Company's debt and his diversion of Company assets.  As such, the claim falls for the same reasons as the claim in Count II, *i.e.*, because the alleged misrepresentations concern the Company's financial condition.

In any event, even if it is read as alleging misrepresentations that do not concern the

-15-

Company's financial condition, Count III does not adequately plead how Santaro was damaged by Sgroi's representations in the August 2008 Agreement; it merely states that in reliance on Sgroi's representations, Santaro "waived certain contractual claims he had against Defendant, and also waived and released any nondischargeability claims against Defendant under section 523(a) of the Bankruptcy Code." There is no allegation regarding how the waiver of "certain contractual claims" actually damaged Santaro. Certainly his release of nondischargeability claims has not prevented Santaro from bringing this action. Thus, while Sgroi's representations in the August 2008 Agreement may constitute evidence relevant to Counts I and IV – for example, on issues of intent or reliance – they do not form the foundation for a claim under section 523(a)(2)(A).

## CONCLUSION

It is therefore

ORDERED that the appeal is granted in part and denied in part; and it is further

ORDERED that the Order of United States Bankruptcy Judge Cangilos-Ruiz dated February 17, 2010 is reversed insofar as it dismisses Counts I and IV of the amended complaint, and affirmed insofar as it dismisses with prejudice Counts II and III; and it is further

ORDERED that Counts I and IV of the amended complaint are reinstated.

IT IS SO ORDERED.

September 24, 2010

Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

-16-